RODNEY ELLISON,                )
                                    )
      **Plaintiff,**            )
                                      )
**vs.**                             )       **CASE NO.** _____
                                    )       **JURY DEMAND**
**NISSAN NORTH AMERICA, Inc.**   )
                                      )
      **Defendant.**         )

## COMPLAINT

Comes now the Plaintiff, Rodney Ellison by and through, Jay B. Jackson, Mitchell & Mitchell, Attorneys at law, his attorneys of record and sues the Defendant as follows:

1.     The Plaintiff, Rodney Ellison, is a citizen and resident of Murfreesboro, Rutherford County, Tennessee. He filed a complaint with the EEOC alleging discrimination in employment. The EEOC issued a right to sue letter dated January 16, 2026. He has exhausted his administrative remedies;

2.     The Defendant, Nissan North America, Inc. ("Nissan") is a corporation organized pursuant to the laws of the State of California and does business in Rutherford County, Tennessee. Their corporate headquarters are in Williamson County, Tennessee. They have a major production plant in Rutherford County, Tennessee;

3.     Mr. Ellison became an employee of Nissan on or about January 12, 2015;

4.     At the time of his termination, Mr. Ellison was employed by Nissan as a Senior Business Planner. Prior to his termination, Mr. Ellison had excelled at his job. He was promoted multiple times and received positive and favorable job performance reviews;

5.      Plaintiff, in his position at his termination, worked with a variety of Nissan subcontractors including one, Phoneternet. This company provided concierge call services for Nissan. They had contracts with Nissan and Plaintiff was the employee who worked with them including processing their payments;

6.      Nissan's senior vice president, Mark Kacynski was an executive up the approval chain from Plaintiff who had authority related to this payment toPhoneternet. He decided to not pay an agreed upon settlement to Phoneternet;

7.      The connected services group vice president Sonia Rief, and her successor vice president Rich Miller terminated the agreement with Phoneternet and purchasing/legal reached a settlement which was approved by Rich Miller and senior vice president Ponz Pandikuthira;

8.      Plaintiff was responsible for processing payments to Phoneternet so it was natural that Phoneternet when not paid would communicate with Plaintiff as to why they were not being paid and they did in fact do so;

9.      Based on information and belief, after the termination, Nissan's legal and purchasing negotiated and agreed to a binding settlement agreement with Phoneternet resulting in this termination of the agreement and payment to Phoneternet. This settlement was communicated to the Plaintiff with instructions to, at least initially, pay to Phoneternet what was required by the terms of the settlement;

10.     But, despite said agreement, Kacynski, prior to Plaintiff being able to pay Phoneternet, instructed Plaintiff to not pay the settlement agreement Nissan had agreed to Phoneternet. Naturally, Phoneternet, expecting payment from a binding settlement agreement, reached out to Plaintiff about this;

11. These payments were to be paid pursuant to this settlement when Nissan agreed with Phoneternet when their services were terminated. Nissan was legally obligated to pay this money. Nissan, despite knowing this, simply refused to do so with Kacynski stating, after he instructed Plaintiff to not pay the settlement amount, that he did not care it was agreed to and that they (Phoneternet) could sue them if they wanted it;

12. Mr. Kacynski instructed Plaintiff to not pay it and let Phoneternet sue them for the money had Nissan agreed to pay in the settlement, As instructed, this money was not paid;

13. As a result, if this decision by Nissan, based on information provided to Plaintiff, a lawsuit was filed by Phoneternet because of Nissan's (as it seemed) intentional breach of this settlement agreement in Texas;

14. During the litigation, Plaintiff learned from Phoneternet that Nissan, despite having previously agreed to the settlement, denied the existence of a settlement in the lawsuit and filings related to the lawsuit in court. Plaintiff though was aware of the existence of this agreement and now aware Nissan was potentially, based on information and belief, misleading the court or others involved in the litigation;

15. As a result of these facts, Plaintiff, as an employee and agent then of Nissan, was then put in a position by Nissan to lie about the existence of this settlement agreement he was involved in and aware of and knew Nissan had agreed to its terms. At this time, Plaintiff was an employee and agent of Nissan who was a party to this lawsuit with facts directly relevant on the issues in. the litigation;

16. In essence, based upon information and belief, Nissan misrepresented during this litigation that it had agreed to this settlement with Phoneternet;

17. When Nissan became aware that Plaintiff was not going to lie about the existence of this settlement agreement, mislead parties in litigation or lie to the court, Nissan was mad and called Plaintiff into meeting;

18. Plaintiff refused to lie or mislead the court or any parties in this litigation and in doing so was acting in accordance with a well-known public policy that during litigation, litigants should not lie and are required to tell the truth. But this was not a policy Nissan cared anything about as they were more interested in not paying money to Phoneternet;

19. Nissan had multiple reasons and motivations, all of which were illegal, to terminate the Plaintiff. These include the Plaintiffs refusal to lie or mislead the parties or court in this Texas litigation and Nissan also terminated Plaintiff due to his age. Nissan did in fact terminate Plaintiff for at least these two reasons;

20. Nissan alleged Plaintiff violated some form of "confidentiality" for having spoken the truth about the existence of this settlement agreement in pending litigation to justify its termination of Plaintiff based on age and violation of public policy. Plaintiff did not violate any confidential obligations with or to Nissan. This was an excuse, without any basis in fact, to fire him for reasons stated herein in this lawsuit. It has no basis in truth;

21. The primary reason for his termination was a result of his age and for his refusal to violate a well settled public policy of Tennessee and the United States;

22. Nissan terminated and retaliated against Plaintiff for reasons that include adhering to a well-grounded public policy of telling the truth about factual matters in litigation and not hiding, obscuring or refusing to tell the truth when in a court proceeding;

23. Plaintiff had reasons to believe Nissan was not being truthful in the Texas litigation with Phoneternet and when he spoke the truth, Nissan fired him. His termination was in part due to his age and in part retaliation and violation of this public policy;

24. Nissan violated Tennessee and United States Public Policy when it terminated him from his employment;

25. Plaintiff is over the age of forty (40) years old;

26. Plaintiff, when he was terminated, was within the class of persons protected against age discrimination;

27. Plaintiff's termination was in part due to his age and account of his age because there were no other grounds for him to be terminated;

28. Plaintiff had through the years, received an increase in salary and pay and had stellar employment evaluations;

29. Nissan terminated him due to his age and/or then reassigned his job to others not within the protected class;

## CAUSES OF ACTION
### I.
### VIOLATIONS OF THE FEDERAL AND TENNESSEE AGE DISCRIMINATION IN EMPLOYMENT ACT

30. Plaintiff incorporates by reference the allegations contained in paragraphs 1-29 as if fully stated herein;

31. The Plaintiff was over the age of forty (40) years of age and therefore protected by the federal and Tennessee laws prohibiting discrimination based on age at the time of the adverse employment actions alleged above;

32. For the reasons set forth above and for other reasons, the actions and behavior and actions of the Defendant subjected the Plaintiff to disparate treatment and adverse employment

actions in whole or in part because of his age in violation of the ADEA 29 U.S.C §623(1) and other parts of this law and in violation of the Tennessee Human Rights Act § 4-21-101 et seq. provisions that prohibit age discrimination;

33. The Defendant's violations of these laws were willful and intentional;

34. As a result, and proximate result of the violations of the Tennessee Human Rights Act and the ADEA by the Defendant against the Plaintiff, the Plaintiff has suffered damages. These damages include, but are not limited to, compensatory damages, lost wages, attorney fees and all other damages allowed by law;

## II.
## COMMON LAW RETALIATORY DISCHARGE BASED ON VIOLATION OF PUBLIC POLICY

35. The Plaintiff incorporates by reference the allegations contained in paragraph 1 through 34;

36. It is the public policy of Tennessee and the United States that litigants shall not mislead or lie to the court or others in pending litigation;

37. Tennessee Laws and Federal Laws are designed to prohibit litigants from perjury and others in litigation from misleading the court. At the time and while the litigation was pending, Plaintiff learned of this potential deception and had facts that directly contradicted, Plaintiff was an employee and agent of Nissan a party to the litigation. Plaintiff was terminated after refusing to lie or mislead the courts or others about existence of a settlement agreement that was at issue in litigation pending in Texas;

38. Tennessee and the United States has a public policy interest in protecting the sanctity of court proceedings through perjury laws preventing parties and others from failing to tell the truth or otherwise mislead the court or litigants;

39. By terminating the Plaintiff for refusing to violate Tennessee Law and Federal Law and an established public policy to tell the truth and not lie or mislead in litigation. Defendant violated the public policy of this state and the United States, and therefore unlawfully terminated the Plaintiff. Defendant then made up a reason to terminate him. In addition to age discrimination, the only other reason for his termination was Plaintiffs refusal not to lie or mislead about this settlement agreement in the Texas litigation;

40. As a result, and proximate result of this termination in violation of public policy, the Plaintiff has suffered damages. These damages include lost pay, base pay and bonuses. The Plaintiff is entitled all damages allowed by Tennessee law including all compensatory damages allowed by law;

## IV.
## STATUTORY RETALIATORY DISCHARGE BASED ON VIOLATION OF PUBLIC POLICY PROTECTION ACT

41. The Plaintiff incorporates by reference the allegations contained in paragraph 1 through 40;

42. Tennessee Code Annotated Section 50-1-304, et seq. states that Tennessee law prohibits employers from terminating employees for refusing to engage in illegal activities. It is the public policy of Tennessee that Plaintiff be protected when he refuses to participate or lie about illegal activities. It is illegal in Tennessee and the United States to commit perjury or mislead courts, and this is the type of illegality is protected by this law;

43. The Plaintiff is an employee as defined by this law and the Defendant is an employer subject to the terms of this statute. The Public policy and laws of this state as defined in this statute and applies to illegal activities which includes and protects Plaintiff against being

7

terminated for refusing to lie under oath, in litigation, mislead the courts or litigants and not telling the truth;

44. Tennessee and the United States have perjury laws designed in part to protect the parties in litigation. The practice of lying in litigation, in ways detailed above, that violate Tennessee law and public policy and United States law and public policy. Nissan became aware that the Plaintiff, with facts relevant to this litigation, was not going to deny the existence of this settlement agreement with Phoneternet as Nissan had in the Texas litigation and decided to terminate him because of Plaintiff not being willing to participate in this potential deception. Plaintiff was terminated at this meeting for refusing to deny the existence of a settlement agreement in litigation as Nissan learned Plaintiff was going to tell the truth about it;

45. Tennessee and the United States laws have a public policy interest in protecting litigation from those who choose to mislead the parties or court or terminate employees who refuse to engage in these illegal activities;

46. Likewise, the same public policy exists to protect employees who refuse to engage in these illegal activities described herein;

47. By terminating the Plaintiff for refusing to violate Tennessee Law and United States law and established public policies to not lie and mislead in litigation, Defendant violated Tennessee Code Annotated Section 50-1-304, et seq. and the public policy of this state and the United States and therefore unlawfully terminated the Plaintiff. In addition to age, the only other reason for his termination was Plaintiffs refusal to deny the existence of this settlement agreement, lie in litigation, mislead in litigation and participate in illegal activities prohibited by US and Tennessee laws;

48. Plaintiff's termination was in retaliation for his failure and refusal to participate in illegal activities and to violate the public policy, Tennessee and US laws, as previously detailed above, of this state and the United States was the sole reason for his termination. This termination violated TCA 50-1-304(b) et seq and Plaintiff was terminated in violation of this law;

49. As a result, and proximate result of this termination in violation of public policy in violation of TCA 50-1-304 et seq, the Plaintiff has suffered damages. These damages include lost pay, base pay and bonuses, severe emotional distress and all other compensatory damages allowed by Tennessee law. The Plaintiff is entitled all damages allowed by this statute and Tennessee law and demands reasonable attorney fees as allowed by this statute;

**WHEREFORE** all premises considered, the Plaintiff requests the relief requested above plus the following:

1. That process be issued and the Defendant be required to answer in the time required by law.

2. That the Plaintiff be awarded a judgment against the Defendant for their actions and violations and the causes of action in this lawsuit, based on the ADEA, Tennessee Human Rights Act, common law public policy protection act and Tennessee Code Ann. 50-1-304, et seq taken against him, in the amount of at least $350,000.00.

3. That the Plaintiff be awarded a judgment against the Defendant and violation in this matter for back wages, compensatory damages and all other damages in the amount of $350,000.00 including all damages allowed by Tennessee Cide Annotated Section 50-1-304, et seq.

9

4. The Plaintiff request that he be awarded a judgment for all reasonable attorney fees incurred from having to file this matter and that the Defendants be required to pay all costs in this action.

5. That Plaintiff be given a jury trial on all issues.

6. That the Plaintiff be awarded all further and general relief the Court deems just and proper.

Respectfully submitted,

/s/ Jay B. Jackson
JAY B. JACKSON, BPR# 016745
Attorney for Plaintiff
MITCHELL & MITCHELL
Attorneys at Law
106 East College Street
P.O. Box 1336
Murfreesboro, TN 37133-1336
(615) 896-4211

## SURETY

I agree to act as surety for the costs in this cause.

/s/ Jay B. Jackson
Jay B. Jackson

# <u>OATH</u>

STATE OF TENNESSEE ) 
COUNTY OF RUTHERFORD )

I, RODNEY ELLISON, after being first duly sworn according to law, make oath I have read the foregoing pleading and that the facts set forth therein are true to the best of my knowledge, information, and belief and that this pleading is not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes mentioned therein.

RODNEY ELLISON

Sworn to and subscribed before me on the __30th__ day of __March__, 2026.

NOTARY PUBLIC

My Commission Expires: __4-21-2029__